# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| IMA JEAN SORRELL & WILLIAM SAMUEL SORRELL, JR. § § § <br> v. § § <br> JERRY W. REEVES, Individually & as Trustee F/B/O WILLIAM SAMUEL SORRELL, SR. TRUST, et al. § § § | Civil Action No. 4:18-CV-00354 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Ima Jean Sorrell's Motion to Compel (Dkt. #112) and the Reeves Defendants'[1] Motion for Protective Order (Dkt. #126).[2] Having reviewed the motion and the relevant pleadings, the Court finds that the motion to compel should be granted and the motion for protective order should be denied.

### BACKGROUND

Plaintiff Mrs. Ima Jean Sorrell was married to Mr. William Sorrell, Sr. (collectively "the Sorrells"). They had two children: Plaintiff, Mr. William Samuel Sorrell, Jr. and Ms. Bonnie Sorrell Gregory. The Sorrells accumulated a sizable joint estate worth in excess of $5,000,000 prior to their retirement.

In 2014, William Sorrell, Sr. consulted the Sorrells' attorney Defendant J.S. "Sandy" Freels to create a second draft of the Sorrells' estate planning documents, which included the Sorrells' wills, trusts, and power of attorneys, specifically creating the Ima Jean Sorrell Trust and William Samuel Sorrell, Sr. Trust ("Sorrell Trusts"). The Sorrell Trusts appointed Defendant, Jerry W.

---

[1] Thee Reeves Defendants consist of Jerry Reeves, Mary Lou Reeves, and Brandon Reeves.
[2] The title of the Motion indicates that this is simply Ima Jean Sorrell's motion, but the introduction of the motion indicates that both Plaintiffs, Ima Jean Sorrell and William Samuel Sorrell, Jr., filed the motion.

Reeves as the trustee of the Sorrell Trusts and named Jerry Reeves' wife, Mary Lou Reeves, and their son, Brandon W. Reeves (collectively "the Reeves Defendants") as successor trustees of the Sorrell Trusts. The estate planning documents also list the Reeves Defendants as the beneficiaries of the residual estate after the death of Ima Jean Sorrell and William Sorrell, Jr. (collectively "Plaintiffs"). Plaintiffs did not know Jerry Reeves or the Reeves Defendants.

William Sorrell, Sr. passed away on February 20, 2014. Immediately after, Jerry Reeves exercised Ima Jean Sorrell's power of attorney. Acting in his roles under the Sorrells' relevant estate planning documents, Jerry Reeves transferred all of Ima Jean Sorrell's assets, including all her cash, to an entity that is believed to be the Sorrell Trusts. Meanwhile, Jerry Reeves also began to make cash payments of $1,300 per month to Plaintiffs. After the filing of the present suit, Jerry Reeves resigned as trustee and Brandon Reeves is now the acting trustee.

Plaintiffs filed suit on May 14, 2018 (Dkt. #1). Prior to and during the present suit, Plaintiffs requested from the Reeves Defendants an accounting of the Sorrell Trusts. The Court then ordered that an accounting be completed, which was completed on December 21, 2018 (Dkt. #83). However, Plaintiff still has questions regarding the accounting; thus, on March 5, 2019, Plaintiff filed the present motion to compel (Dkt. #112). On March 19, 2019, the Reeves Defendants filed a response (Dkt. #120). Plaintiffs filed their reply on March 20, 2019 (Dkt. #122) and the Reeves Defendants filed their reply on March 27, 2019 (Dkt. #124). The Reeves Defendants also filed the present motion for protective order, raising the same or similar arguments presented in the motion to compel briefing on March 27, 2019 (Dkt. #126).

# LEGAL STANDARD

**Motion to Compel**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). It is well-established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents ("RFPs"), electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand,

"[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a nonfrivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). For example, a party requesting discovery may have little information about the burden or expense of responding. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." FED. R. CIV. P. 26(b)(1), advisory committee note (2015).

**Motion for Protective Order**

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The burden is upon the party seeking the protective order "to show the necessity of its issuance, which contemplates a particular and specific demonstration

of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (internal quotation marks and citation omitted). Therefore, a protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Laundry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for protective order because it is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

## ANALYSIS

Plaintiffs request the Court to compel the deposition of Montgomery Coscia Greilch, LLP, ("Montgomery") and the production of documents from Montgomery.[3] Plaintiffs also request that this motion be made applicable to the firm or individual who prepared the accounting, if it is not Montgomery, because, according to Plaintiffs, the Reeves Defendants have been "somewhat ambiguous as to who prepared the accounting." (Dkt. #112 at p. 3 n.2). According to Plaintiffs, receiving the accounting from the Reeves Defendants raised questions and concerns relevant to the prosecution of the lawsuit. Plaintiffs maintain that settling these questions requires testimony and the production of documents from the person who prepared the accounting. Moreover, as

---

[3] According to Plaintiffs:

> This includes testimony and documents concerning the accounting, including but not limited to a person with personal knowledge as to: (i) classification of any "cash" payment, "cash deposit", bank transactions and how the account classification determination was made, (ii) all source documents used in the preparation of the accounting[,] (iii) instructions and guidelines, both written and oral, in the preparation of the accounting, (iv) whether or not the deponent of the Firm performed any verification procedures, including but not limited to bank reconciliations, inventory of livestock, liabilities payable, accounts or notes receivables and "cash" in the safe deposit boxes; and (v) all work papers used in the preparation of the accounting.

(Dkt. #112 at p. 2 n.1).

5

completion of tax returns are at issue in the case, Plaintiffs seek to depose the individual or firm who is involved in completing the tax returns.

The Reeves Defendants argue, with support in a declaration, that Montgomery did not prepare the accounting, instead an individual named Mike Sorlie prepared the accounting in the case. Regardless, the Reeves Defendants maintain that the attorney-client privilege protects both Montgomery and Sorlie based on the extension of the privilege through *Kovel*. The Court first analyzes the applicability of the privilege and then turns to the specific arguments in relation to the requests for deposition and documents.

The attorney-client privilege is "the oldest and most venerated of the common law privileges of confidential communications [and] serves [an] important interest in our judicial system." *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002); *accord Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Gilson v. State*, 8 P.3d 883, 910 (Okla. Crim. App. 2000). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. 383, 389 (1981).

"[T]he practice of law has increasingly grown more complex, attorneys cannot function effectively without the help of others"; thus, in *Kovel* the Second Circuit extended the attorney-client privilege to "'include all other persons who act as the attorney's agents,'" including "financial professional such as accountants." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. Oct. 17, 2003) (quoting *United States v. Kovel*, 296 F.2d 918, 921–22 (2d Cir. 1961)); *see also United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (adopting the *Kovel* test). In applying this test,

> the Fifth Circuit emphasized that: [N]othing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their

> payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.

*Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2011 WL 13202145, at *6 (N.D. Tex. Sept. 14, 2011), *report and recommendation adopted in part by*, 2011 WL 13201877 (N.D. Tex. Dec. 21, 2011) (alteration in original) (quoting *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976)). Thus, the party seeking the privilege is "nonetheless required to establish each element of the privilege." *Id.* (citing *Pipkins*, 528 F.2d at 563).

One such element is that the communication or documents must be made for the purpose of rendering legal services. *Self & Assocs., Inc. v. Jackson*, 269 P.3d 30, 36 (Ok. Civ. App. 2011) (citing OKLA. STAT. tit. 12 § 2502 (2001)); *Huje v. DeShazo*, S.W.2d 920, 925 n.4 (Tex. 1996). As such, "[w]hen an attorney 'retains an accountant as a listening post,' or 'direct[s] the client . . . to tell his story in the first instance to an accountant engaged by the lawyer . . . so that the lawyer may better give legal advice, communications by the client reasonably related to th[ose] purpose[s] ought to fall within the privilege.'" *Ferko*, 218 F.R.D. at 134 (alterations in original) (quoting *Kovel*, 296 F.2d at 922). However, "[i]f a client seeks only accounting services instead of legal advice, 'or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.'" *Id.* (quoting *Kovel*, 296 F.2d at 922). "[A]n attorney must prove that he or she hired an accountant for a specific purpose" and "[t]hat purpose, in turn, must relate significantly to the disputed communications or documents." *Id.* "Thus, an attorney claiming the attorney-client privilege for communications between an attorney and an accountant or for documents prepared by an accountant for an attorney must prove that the accounting services enabled the giving of legal advice." *Id.* (citing *United States v. Davis*, 636 F.2d 1028, 1043 n.17 (5th Cir. Unit A 1981); *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir. 1976)).

7

In response to the motion, the Reeves Defendants argue that Montgomery and Sorlie were retained to assist in providing legal services. This argument is supported by each of their *Kovel* agreements. These agreements state that they were retained to "assist [the attorneys] in rendering legal advice to the Client, including but not limited to, summarizing and analyzing financial data, and reflecting its work in summaries, analyses, and schedules." (Dkt. #120, Exhibit 2 at p. 1; Dkt. #120, Exhibit 4 at p. 1). Finally, this statement was also included in the declaration submitted to support the response.

However, this general allegation is insufficient to demonstrate that Montgomery and Sorlie solely assisted in rendering legal services. As previously mentioned, the burden is on the party asserting the privilege to demonstrate how each document or communication satisfies each element. *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004); *see Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 n.7 (5th Cir. 1985); *Chandler v. Denton*, 741 P.2d 855, 865 (Okla. 1987). General allegations of privilege are insufficient to meet this burden. *Navigant*, 220 F.R.D. at 473; *see Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Servs., Inc.*, 120 F.R.D. 504, 510 (W.D. La. 1988); *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996). Instead, "a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection." *Navigant*, 220 F.R.D. at 473 (quoting *Caruso v. Coleman Co.*, No. 93-CV-6733, 1995 WL 384602, at *1 (E.D. Pa. Jun. 22, 1995)). "The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id.* "Although a privilege log and an *in camera* review may assist the court in conducting its analysis, a party asserting the privilege still must provide 'a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure.'" *Id.* at 473–

74 (quoting *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1212 (S.D. Ind. 1994); *see also Greene, Tweed of Del., Inc. v. DePont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 699 (D. Nev. 1994)). The Reeves Defendants have not provided sufficient evidence to meet their burden to show that the privilege applies in this case.

In fact, the Reeves Defendants claim that Sorlie prepared the accounting in this case, and offer no explanation as to how preparing an accounting would assist in rendering legal services or providing advice to the Reeves Defendants as the clients in this situation. Even if there were some purpose in rendering legal services, the *Kovel* extension of the attorney-client privilege does not extend for "dual-purpose" communications. *UPMC v. CBIZ, Inc.*, No. 3:16-cv-204, 2018 WL 1542423, at *8 (E.D. Pa. March 29, 2018) (quoting *United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999)).

Specifically, regarding the request to compel the deposition, the Reeves Defendants contend that Montgomery did not prepare the accounting and therefore cannot answer questions regarding the accounting. However, Plaintiffs are also seeking information regarding tax returns. The Court finds that the Reeves Defendants did not meet their burden to show that Montgomery should not be subject to a deposition to answer relevant questions to the lawsuit. As to Sorlie, Defendants argue that Plaintiffs did not serve a notice of deposition as to Sorlie. However, this is likely because Plaintiffs did not know who Sorlie was prior to filing this motion, as such, the Court finds it proper for Plaintiffs to file such a notice if Plaintiffs deem it necessary. Again, the Reeves Defendants did not meet its burden to show what, if anything, that Sorlie worked on was privileged and it would be appropriate for Plaintiffs to ask Sorlie about the accounting and tax returns, if he prepared these. The Court does not hold that Montgomery or Sorlie must disclose confidential

information during their depositions; however, the Reeves Defendants have not met their burden to demonstrate what Montgomery or Sorlie worked on that is, in fact, privileged.

Regarding the documents, Defendants argue that they have already provided the evidence that Plaintiffs are looking for and it would be overly burdensome to reproduce them. Plaintiffs maintain that they are not seeking what has already been produced but instead are seeking "work papers, notes, summaries, analyses, schedules, tax forms and other accounting documents it has prepared or are in its possession." (Dkt. #122 at p. 5). The Reeves Defendants are not required to produce any documents they have already produced, but they have not shown why any of the information Plaintiffs are additionally seeking is privileged or undiscoverable. As such, the Reeves Defendants are ordered to produce the documents requested.

Because the Court is granting Plaintiffs requested relief, the Court finds the arguments raised in the Reeves Defendants protective order, being substantially similar to those in the response to the motion to compel, unpersuasive.

## CONCLUSION

It is therefore **ORDERED** Plaintiff Ima Jean Sorrell's Motion to Compel (Dkt. #112) is hereby **GRANTED** and the Reeves Defendants' Motion for Protective Order (Dkt. #126) is hereby **DENIED**.

**SIGNED this 21st day of October, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE